UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **JOSHUA LATRAVIS PLATER** | **CIVIL ACTION NO. 20-1213-P** |
| **VERSUS** | **JUDGE DOUGHTY** |
| **STEVE PRATOR, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIMS

Before the court are a civil rights complaint and several amended complaints filed in forma pauperis by pro se plaintiff Joshua Latravis Plater ("Plaintiff"), pursuant to 42 U.S.C. § 1983.[1] This complaint was received and filed in this court on September 18, 2020. Plaintiff is currently incarcerated in the United State Penitentiary McCreary in Pine Knot, Kentucky. He claims his civil rights were violated by prison officials while incarcerated at the Caddo Correction Center in Shreveport, Louisiana. He names Steve Prator, the Caddo Parish Sheriff's Office Detention Bureau, Tommy Englade, the Electronic Kites System Administration, D. Daniels, the Emergency Response Team, Sgt. D. Darby, John

---

[1] Plaintiff's claims regarding an incident on December 29, 2018 are not addressed in this complaint because they are the same claims Plaintiff raised in Plater v. Prator, et al., 5:19-cv-171 and are currently pending.

Childress, Medical, Deputy York, Deputy Hamilton, and the Classification Jail Records as defendants.[2]

Plaintiff claims that on July 7, 2019, Deputy D. Daniels called a signal for refusal and ordered him to 22 hours lockdown. Deputy D. Daniels also filed a disciplinary report charging him with disobeyal of written or verbal orders. Plaintiff was found guilty and sanctioned to the Behavioral Management Unit and rehoused to Foxtrot Dormitory. He claims this punishment was excessive.

Plaintiff claims he is being restrained from seeking protection from Deputy D. Daniels and remedies in the administrative grievance procedure. He claims Sgt. Tommy Englade has rejected almost every grievance he has filed and violated his right to appeal. He claims Sgt. Englade conspired with others and forced him to suffer injuries. He claims Sgt. Englade did not use common sense when considering his grievances filed on August 22, 2020 and August 29, 2020.

Plaintiff claims Booking Deputy Hamilton refused to allow his legal work and property into the facility. He claims Deputy Hamilton went through his papers with important references and documentations and made him send the papers home. He claims Deputy Hamilton tampered with evidence.

Plaintiff claims Sheriff Steve Prator concurs with the actions of his staff members and does not defend the inmates. He claims he has never seen Steve Prator in the facility.

---

[2] Plaintiff's claims regarding alleged attacks on July 16, 2019 and in August of 2020 are addressed in a separate memorandum order.

Plaintiff claims that in August of 2020, he was returned from a mental health evaluation in the Bureau of Prisons. He claims he was kept on administration segregation and labeled as a threat against staff. He claims this was an abuse of his reputation. Plaintiff claims he was held in disciplinary segregation in violation of his First and Eighth Amendment rights. He claims the classification department and ranking officers failed to rehouse him in general population for three months.

Plaintiff claims Deputy Daniels pursued retaliation and physical altercations against him on September 19, 2020, October 7, 2020, and November 26, 2020.

Plaintiff claims Steve Prator and the Caddo Parish Sheriff's Office Detention Bureau taxed him with excessive disciplinary sanctions, prices for visits, high medical prices, outrageous commissary prices, high deposit and processing fees, automatic charges for indigent items including used clothing, and entertainment privileges. He claims he lost recreation privileges and was injured because of disciplinary report SI2020-1890. He claims Disciplinary Hearing Officer Sgt. Childress taxed him excessively in disciplinary report SI2020-1890 and sentenced him to 7 days of disciplinary segregation in violation of the Eighth Amendment. Plaintiff claims that on December 14, 2020 and December 15, 2020, he was charged $20.00 for medical sick calls that he was not called out for.

Accordingly, Plaintiff seeks monetary compensation.

## LAW AND ANALYSIS

**Due Process in the Disciplinary Process**

Plaintiff claims that on July 7, 2019 Deputy D. Daniels ordered him to 22 hours lockdown and filed a disciplinary report charging him with disobeyal of written or verbal

orders. Plaintiff was found guilty and sentenced to the Behavioral Management Unit and rehoused to Foxtrot Dormitory. Plaintiff claims this punishment was excessive. On August 23, 2020, Plaintiff received a disciplinary report for disobeyal of written or verbal orders [Doc. 6, p. 24]. He claims he lost his recreation privileges and was sentenced to seven days of disciplinary segregation. To the extent Plaintiff contends he was punished without due process, these claims are not cognizable.

In Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified when due process protections attach to the prison disciplinary process. The Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected. Id. 132 L.Ed.2d at 431.

Under the guidance provided by Sandin, the Fifth Circuit has held that, as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995). Moreover, in commenting on Sandin, the Fifth Circuit noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner. Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) citing Sandin, 115 S.Ct. at 2297.

Plaintiff does not allege that the disciplinary actions affected the duration of his sentence. To the contrary, Plaintiff's allegations concern his sentence to lock-down and the Behavioral Management Unit and administrative segregation and loss of recreation privileges which are far from "extraordinary." This court finds that under <u>Sandin</u>, <u>Orellana</u> and <u>Madison</u>, a sentence of lock-down, administrative segregation, housing on the Behavioral Management Unit, and loss of recreation privileges does not constitute the type of atypical punishment that presents a significant deprivation which would implicate due process concerns.

Accordingly, Plaintiff's claims that he was punished without due process of law are without merit and should be dismissed with prejudice as frivolous.

**Administrative Remedy Procedure**

Plaintiff complains he is being restrained from seeking protection and remedies through the administrative remedy procedure. He claims his grievances were wrongly rejected and thus violated his right to appeal. He claims Sgt. Englade conspired with others to commit injustices against him and he did not use common sense when reviewing his grievances.

Inmates do not have a constitutionally protected right to a prison administrative grievance procedure. See <u>Oladipupo v. Austin, et al.</u>, 104 F.Supp.2d 626 (W.D. La. 2000); <u>Brown v. Dodson, et al.</u>, 863 F. Supp. 284 (W.D. Va. 1994); <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991). A prison official's failure to comply with a state administrative grievance procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison

inmates.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231.  Furthermore, state administrative grievance procedures are separate and distinct from state and federal legal procedures.  Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of access to the courts.  Flick, supra.  Thus, insofar as Plaintiff alleges that the Defendants failed to comply with the prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983.

Accordingly, these claims regarding the administrative remedy procedure should be dismissed with prejudice as frivolous.

**Property**

Plaintiff claims he was not allowed to bring his legal work and property into the facility.  Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities secured by the Constitution or laws of the United States" by a person acting under color of state law.  Accordingly, the initial inquiry and threshold concern of the reviewing court is whether Plaintiff's constitutional rights have been violated.  See Parratt v. Taylor, 451 U.S. 527, 107 S. Ct. 1908 (1981).

The property of which Plaintiff was allegedly deprived can constitute "property" within the meaning of the Due Process Clause of the Fourteenth Amendment and its loss is worthy of redress if the loss implicates constitutional rights.  See id. at 542, 107 S. Ct. at 1916.  However, the Fourteenth Amendment is not a font of tort law to be superimposed

upon whatever systems may already be administered by the States. See Baker v. McCollan, 433 U.S. 137, 99 S. Ct. 2689 (1979). A constitutional deprivation of property without due process of law, as differentiated from a state tort law claim, must be intentional and plaintiff must allege specific facts which support such a conclusion.

Absent an intentional deprivation of property where the charge only supports a negligent failure by defendants, a constitutional deprivation does not lie. "[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property." Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986). Moreover, even in instances where intentional deprivation occurs where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204 (1984), on remand, 744 F.2d 22 (4th Cir. 1984); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).

Mere assertions of intentionality are not enough in the absence of specific facts supporting the assertions and "even if the taking were intentional, the state could afford the [plaintiff] due process by providing a post-deprivation remedy for the redress of the unforeseeable, unauthorized injury... alleged." Lewis v. Woods, 848 F.2d 649, 652 (5th Cir. 1988). Louisiana law provides Plaintiff the opportunity to seek redress for his loss, whether intentional or negligent. See La. Civ. Code art. 2315.

Accordingly, Plaintiff has failed to state a claim cognizable under Section 1983.

**Access to the Courts**

Plaintiff claims his legal work was not allowed into the facility and was sent to his home. Prisoners have a constitutional right of meaningful access to the courts. Degrate v. Godwin, 84 F.3d 768, 768-69 (5th Cir.1996) (quoting Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)). However, this constitutional guarantee is not without limitation. Lewis v. Casey, 518 U.S. 343 (1996) (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987)). In Lewis v. Casey, 518 U.S. 343, (1996), the Supreme Court reviewed its holding in Bounds v. Smith, 430 U.S. 817, (1977) which is the source of a prisoner's constitutional right to "meaningful access to the courts." While the Supreme Court reaffirmed a prisoner's right of access to the courts in Lewis, the Court limited the parameters of Bounds and set forth a standard to be applied when determining whether to grant relief for an access to the courts violation.

In so holding, the Court noted that a prisoner must show an actual injury, explaining that this requirement is derived from the doctrine of standing. Lewis, 116 S.Ct. at 2179. The Court used the analogy of a prisoner who is denied access to that of a healthy prisoner who has been deprived of medical treatment. In both cases, neither the access deprived prisoner nor the healthy prisoner have sustained constitutional injury, and thus, are not entitled to relief under Section 1983. The Court emphasized that the court's role is to provide relief to claimants who have suffered actual harm, not to interfere with the management of prisons.

Accordingly, the Fifth Circuit has held that a prisoner cannot prevail on an access to the courts claim without proving an actual injury in non-frivolous litigation as a result

of the defendant's alleged unconstitutional conduct. Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999).

Application of the actual injury requirement to the instant case supports a finding that Plaintiff 's claims are frivolous. Plaintiff has not satisfied the "actual injury" requirement as he makes no claims of injury in his complaint or amended complaint. Plaintiff has failed to demonstrate that he lost the right to commence, prosecute, or appeal any suit because of the actions of Defendants. Thus, he has failed to state any actual injury.

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Conclusory Claims**

Plaintiff claims Deputy Hamilton went through his papers and tampered with evidence. He claims Sheriff Steve Prator concurs with the actions of his staff members and does not defend inmates. He further claims he has never seen Sheriff Steve Prator in the facility. Plaintiff claims he was taxed with excessive disciplinary sanctions, prices for visits, high medical prices, outrageous commissary prices, high deposit and processing fees, automatic charges for indigent items, and entertainment prices.

A Section 1983 plaintiff has long been required to plead his case with "factual detail and particularity," not mere conclusory allegations. Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985); Hale v. Harney, 786 F.2d 688 (5th Cir. 1986). The Supreme Court has abolished this heightened pleading standard for claims against municipalities, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993), but the requirement remains firmly in place for claims against individual public officials. See Schultea v. Wood, 47 F.3d 1427 (5th Cir.1995) (en banc).

Plaintiff has named individual prison officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations. Plaintiff has failed to do so as to these claims.

Accordingly, these claims should be dismissed for failure to state a claim on which relief may be granted.

**Classification**

Plaintiff complains that in August of 2020, he was placed on administrative segregation and labeled as a threat against staff. He claims he was not rehoused in general population for three months. These are not claims that this court can resolve. Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration. See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds). Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline, and security in prison. See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials. See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990). "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In

addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)).

Accordingly, Plaintiff's claims regarding his classification are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Exhaustion of Administrative Remedies**

Plaintiff claims Deputy Daniels pursued retaliation and physical altercations against him on September 19, 2020, October 7, 2020, and November 26, 2020. He claims that on December 14, 2020 and December 15, 2020, he was charged for medical visits that did not occur.

Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Section 1997e requires Plaintiff to properly exhaust available administrative remedies before filing a Section 1983 suit. See Woodford v. Ngo, 126 S.Ct. 2378 (2006). This exhaustion requirement requires proper exhaustion of administrative remedies in accordance with prison procedures, and an untimely or otherwise procedurally defective grievance or appeal will not suffice. Woodford, 126 S.Ct. 2378. The Fifth Circuit has applied the requirement to claims such as the use of excessive force, see Wendell, 162 F.3d at 887, and denial of medical care. See Harris v. Hegmann,

198 F.3d 153 (5th Cir. 1999). Failure to exhaust administrative remedies is an affirmative defense, and "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). However, dismissal may be appropriate when, the complaint on its face establishes the inmate's failure to exhaust. See Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir.2007); Hicks v. Lingle, 370 Fed. Appx. 497, 498 (5th Cir.2010).

After reviewing Plaintiff's complaint, the court finds Plaintiff has failed to properly exhaust administrative remedies as to these claims. Plaintiff filed this complaint on September 18, 2020 and these incidents occurred after this date. Thus, these claims should be dismissed without prejudice for failure to exhaust administrative remedies.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights claims regarding due process in the disciplinary process, the administrative remedy procedure, his property, access to the courts, his classification, evidence tampering, failure to defend inmates, excessive disciplinary sanctions, prices for visits, high medical and commissary prices, high deposit and processing fees, automatic charges for indigent items, and entertainment prices be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). **IT IS FURTHER RECOMMENDED** that Plaintiff's civil rights claims regarding incidents on September 19, 2020, October 7, 2020, November 26, 2020, December 14, 2020, and December 15, 2020 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the

proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

    **THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 8th day of February 2022.

Mark L. Hornsby
U.S. Magistrate Judge